**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Gold Star Resources, LLC, | No. CV-14-02733-PHX-NVW |
| Plaintiff, | **ORDER** |
| v. | |
| Joseph D. Balser et al., | |
| Defendants. | |

Before the Court is Defendant Balser's Motion to Set Aside Default (Doc. 53), Defendant Morris's Motion to Set Aside Default (Doc. 63), Plaintiff's Motion for Judgment by Default (Doc. 58), and the parties' accompanying briefs. For the reasons that follow, the Defendants' Motions to Set Aside Default will be conditionally granted and Plaintiff's Motion for Judgment by Default will be denied.

**I.    BACKGROUND**

Plaintiff Gold Star Resources, LLC, ("Gold Star") claims to be the victim of "a sophisticated scheme or confidence game designed to defraud." (Doc. 42 at ¶ 9.) Here is how the "scheme" allegedly worked: Defendant Joseph Balser, a scientist, claimed to have a unique method for identifying and extracting gold and silver deposits from older mining claims. (*Id.*) Defendant James Morris, the owner of various mining properties in Arizona, vouched for Balser's methods. (*Id.*) Other defendants confirmed Balser's methods. (*Id.*) In reliance on these representations, Gold Star raised millions of dollars, bought hundreds of mining claims in Arizona, and began constructing a chemical plant

for the purpose of extracting gold and silver. (*Id.* at ¶¶ 12, 13, 19.) The plant never produced any meaningful quantities of gold and silver, and Balser's method could not be confirmed through an independent laboratory. (*Id.* at ¶¶ 20, 22.) Gold Star sued Balser and Morris for securities violations, racketeering, fraud, conversion, breach of covenant of good faith and fair dealing, breach of contract, and conspiracy. (*Id.* at ¶¶ 49-88.)

Balser failed to respond to Gold Star's amended complaint by March 23, 2015. Accordingly, Gold Star applied for entry of default as to Balser (Doc. 21), and default was entered on April 2 (Doc. 27).

Likewise, Morris failed to respond to Gold Star's amended complaint by April 4, 2015. Accordingly, Gold Star applied for entry of default as to Morris (Doc. 28), and default was entered on April 10 (Doc. 29).

On July 31, Balser moved to set aside the entry of default against him. (Doc. 53.) In his affidavit (Doc. 53-1), he explained he did not receive a copy of Gold Star's complaint until weeks after service had been executed on March 1. He further explained that, due to his limited resources and communication capabilities, he was unable to retain an attorney quickly and was unable to explain his circumstances to his attorney until meeting with him on May 29.

On August 17, Morris moved to set aside the entry of default against him. (Doc. 63.) In his affidavit (Doc. 63-1), he explained he did not receive a copy of Gold Star's complaint until May. He further explained he thought Balser's attorney was representing him as well as Balser. After he discovered otherwise on July 17, he asked the Court for an extension of time and retained a lawyer, whom he instructed to file an answer as soon as possible.

Gold Star opposes both motions. (Doc. 64.) In response to Balser's motion, Gold Star argues that an email sent by Balser's attorney on March 26, 2015, belies Balser's claim that he could not quickly communicate with an attorney and indicates unreasonable delay. In response to Morris's motion, Gold Star argues Morris's affidavit is inadequate, false, and inconsistent with Balser's affidavit. Gold Star also claims that neither

defendant has a meritorious defense to the underlying allegations and that setting aside these defaults would unfairly prejudice Gold Star. For these same reasons, Gold Star moved for default judgment against Balser and Morris. (Doc. 58.)

## II. ANALYSIS

"The court may set aside an entry of default for good cause . . . ." Fed. R. Civ. P. 55(c). "To determine 'good cause,' a court must consider three factors: (1) whether the party seeking to set aside the default engaged in culpable conduct that led to the default; (2) whether it had no meritorious defense; or (3) whether reopening the default judgment would prejudice the other party. This standard, which is the same as is used to determine whether a default judgment should be set aside under Rule 60(b), is disjunctive, such that a finding that any one of these factors is true is sufficient reason for the district court to refuse to set aside the default." *United States v. Signed Pers. Check No. 730 of Yubran S. Mesle*, 615 F.3d 1085, 1091 (9th Cir. 2010) (alterations and citations omitted).

"Crucially, however, judgment by default is a drastic step appropriate only in extreme circumstances; a case should, whenever possible, be decided on the merits. Additionally, while the same test applies for motions seeking relief from default judgment under both Rule 55(c) and Rule 60(b), the test is more liberally applied in the Rule 55(c) context . . . because in the Rule 55 context there is no interest in the finality of the judgment with which to contend." *Id.* at 1091 & n.1 (alteration and citations omitted).

### A. Neither Defendant Engaged in Culpable Conduct

"A defendant's conduct is culpable if he has received actual or constructive notice of the filing of the action and *intentionally* failed to answer. . . . [T]he term 'intentionally' means that a movant cannot be treated as culpable simply for having made a conscious choice not to answer; rather, to treat a failure to answer as culpable, the movant must have acted with bad faith, such as an intention to take advantage of the opposing party, interfere with judicial decisionmaking, or otherwise manipulate the legal process." *Id.* at

1092 (alteration and citations omitted) (emphasis in original).  Typically, when a defendant's conduct is deemed culpable, "there is no explanation of the default inconsistent with a devious, deliberate, willful, or bad faith failure to respond." *Id.* (citation omitted).

### 1. Balser

Balser has offered a plausible explanation for his default, consistent with good faith conduct.  According to his affidavit (Doc. 53-1), the complaint was served on him by delivery to his wife on March 1, 2015.  He was living in a different city at the time, with limited contact with his family.  The complaint was then placed with other mail, which was forwarded to him weeks later.  Due to his limited resources and communication capabilities, he could not retain an attorney quickly.  His employer eventually retained an attorney for him.  He was not able to explain his circumstances to his attorney until meeting with him on May 29, 2015.

In response to this explanation, Gold Star points to an email sent by Balser's attorney on March 26, 2015.  (Doc. 64-1.)  From this email, Gold Star draws two inferences: (1) Balser's affidavit is false because Balser was apparently able to contact an attorney quickly, and (2) Balser's delay in moving to set aside default was unreasonable because he was represented by an attorney several days before default was entered.  Neither of these inferences is valid.

First, the fact that Balser had representation as of March 26, 2015, does not contradict his affidavit.  Balser does not specify when he retained counsel.  Although he states he was unable to explain his circumstances to his attorney until May 29, 2015, that statement is consistent with his claim of limited communication capabilities.  Indeed, Balser's attorney attested that, though he was retained on March 26, he was not able to collect essential information until meeting with Balser on May 29.  (Doc. 65-1.)

Second, the fact that Balser had representation as of March 26, 2015, does not make his delay in moving to set aside default unreasonable.  Balser's attorney acted prudently by emailing Gold Star's attorney on March 26, asking for a withdrawal of entry

of default.  (Doc. 64-1.)  The subsequent delay in moving to set aside default is somewhat understandable given that Balser's attorney could not collect necessary information from Balser until May 29.  (Doc. 65-1.)

Even if the delay were unreasonable, it would not establish an "intention to take advantage of the opposing party, interfere with judicial decisionmaking, or otherwise manipulate the legal process."  *Mesle*, 615 F.3d at 1092 (citation omitted).  At most, unreasonable delay would indicate error on the part of Balser's attorney.  And "on a motion to set aside a default or default judgment, courts have been reluctant to attribute to the parties the errors of their legal representatives."  *Jackson v. Beech*, 636 F.2d 831, 837 (D.C. Cir. 1980) (citation omitted).  Therefore, Balser has not engaged in culpable conduct.

### 2. Morris

Morris has also offered a plausible explanation for his default, consistent with good faith conduct.  According to his affidavit (Doc. 63-1), the complaint was served on him by delivery to a homeless man staying at his house on March 14, 2015.  Morris was out of town and had allowed the man to stay at his house.  The man did not tell Morris of the complaint.  Morris first discovered the complaint when he returned home in May.  Morris then spoke with Balser, who said his attorney would represent both of them.  It was not until July 17 that Morris found out he was not being represented.  He then asked the Court for an extension of time and retained a lawyer.  He instructed his lawyer to file an answer as soon as possible.

Gold Star contends Morris's affidavit is inadequate, false, and inconsistent with Balser's affidavit.  No persuasive evidence supports these contentions.  Morris's affidavit suffices to show he did not engage in culpable conduct.

### B. Both Defendants Have Raised Meritorious Defenses

"All that is necessary to satisfy the 'meritorious defense' requirement is to allege sufficient facts that, if true, would constitute a defense: the question whether the factual

allegation is true is not to be determined by the court when it decides the motion to set aside the default." *Mesle*, 615 F.3d at 1094 (alteration and citations omitted).

Balser raises various defenses in his affidavit (Doc. 53-1), including: his methods are valid scientific processes; he always honestly represented his processes and conclusions; he never planned to deceive; he never had a written agreement regarding his services; and he never made the statements attributed to him in the complaint. These facts, if true, would constitute meritorious defenses. Gold Star's contention that the defenses are false is beside the point.

Morris raises defenses in his motion to set aside default (Doc. 63): he denies the scheme attributed to him in the complaint, and he points out that the land sale contracts he sold contained no warranties or promises that would give rise to Gold Star's claims against him. These facts, if true, would also constitute meritorious defenses.

**C.     Plaintiff Would Not Be Prejudiced by Setting Aside the Defaults**

"To be prejudicial, the setting aside [of the default] must result in greater harm than simply delaying resolution of the case. Rather, the standard is whether plaintiff's ability to pursue his claim will be hindered." *TCI Grp. Life Ins. Plan v. Knoebber*, 244 F.3d 691, 701 (9th Cir. 2001) (alteration and citations omitted).

Setting aside these defaults will not hinder Gold Star's ability to pursue its claims. There is no indication the defaults have resulted in "tangible harm such as loss of evidence, increased difficulties of discovery, or greater opportunity for fraud or collusion." *Thompson v. Am. Home Assur. Co.*, 95 F.3d 429, 433-34 (6th Cir. 1996), *quoted with approval in Knoebber*, 244 F.3d at 701.

Gold Star contends the defaults have prolonged the litigation, increased its costs, and given the defendants an opportunity to plan for an adverse outcome. But this is just to say the defaults have caused delay. Mere delay is not prejudice.

/ / /

/ / /

/ / /

### III. CONCLUSION

For the reasons stated above, good cause exists to set aside the entry of default as to defendants Balser and Morris. This good cause extends to the defendants' spouses, who are parties to this action only because Gold Star contends the defendants incurred liability in furtherance of the communities of their respective marriages. (Doc. 42 at 2.)

Entry of default as to defendants Balser and Morris will therefore be set aside, on the condition that they each file pleadings in response to Gold Star's amended complaint no later than October 20, 2015. Gold Star's request for attorney's fees is denied without prejudice to renewal at the end of this case, when all requests for attorney's fees may be considered at once. Gold Star's motion for default judgment will be denied.

IT IS THEREFORE ORDERED that Defendant Balser's Motion to Set Aside Default (Doc. 53) and Defendant Morris's Motion to Set Aside Default (Doc. 63) are granted, on the condition that Balser and Morris each file pleadings in response to Plaintiff's Amended Complaint (Doc. 42) no later than October 20, 2015.

IT IS FURTHER ORDERED that Plaintiff's Motion for Judgment by Default (Doc. 58) is denied.

Dated this 6th day of October, 2015.

Neil V. Wake
United States District Judge